**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

|  |  |  |
|---|---|---|
| UNION INSURANCE COMPANY, | ) | |
| ACADIA INSURANCE COMPANY, and | ) | |
| CONTINENTAL WESTERN | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:26 cv 00055 |
| v. | ) | |
| | ) | |
| BCW DIVERSIFIED, INC., and ULTRA | ) | |
| PRO INTERNATIONAL, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

---

**COMPLAINT FOR DECLARATORY JUDGMENT**

---

NOW COME Plaintiffs, UNION INSURANCE COMPANY ("Union"), ACADIA INSURANCE COMPANY ("Acadia"), and CONTINENTAL WESTERN INSURANCE COMPANY ("CWIC"), by and through their undersigned attorneys, and for their Complaint for Declaratory Judgment against Defendants, BCW DIVERSIFIED, INC., and ULTRA PRO INTERNATIONAL, LLC, they state as follows:

## NATURE OF ACTION

1.      Plaintiffs, Union Insurance Company, and then Acadia Insurance Company, issued a series of commercial lines policies to BCW Diversified, Inc. ("BCW") providing commercial general liability coverage beginning on March 15, 2014, and renewed for 1-year terms through March 15, 2025 (hereinafter referred to collectively as the "CGL Policies"). Plaintiff Continental Western Insurance Company also issued a series of consecutive one-year commercial umbrella policies to BCW from March 15, 2014, through March 15, 2025 (the "Umbrella Policies").

2.      Plaintiffs bring this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure seeking a declaration with respect

to their duty to defend and indemnify BCW under the CGL and Umbrella Policies in connection with an underlying Counterclaim for trademark infringement filed in a lawsuit styled *BCW Diversified, Inc. v. Ultra PRO International, LLC. v.,* Case No. 24-cv-01699-MJD-RLY, currently pending in the United States District Court for the Southern District of Indiana (hereinafter, the "Underlying Lawsuit").  Plaintiffs seek a declaration that no coverage is available under the CGL Policies and/or the Umbrella Policies and that Plaintiffs have no obligation to defend BCW or indemnify Defendants in connection with the Counterclaim or Underlying Lawsuit.

3.      There exists an actual and justiciable controversy among the parties concerning their respective rights, duties, and obligations under and pursuant to the CGL Policies and the Umbrella Policies.  Plaintiffs contend that there is no obligation to defend BCW or indemnify Defendants in connection with the claims asserted in the Counterclaim or Underlying Lawsuit based on the terms of the CGL Policies and the Umbrella Policies and applicable law.

4.      Plaintiffs have no adequate remedy at law and, therefore, desire a judicial determination of their rights and duties in accordance with the CGL Policies and the Umbrella Policies.  A judicial declaration is necessary and appropriate at this time so that Plaintiffs may ascertain its or their rights and duties with respect to defense and indemnity under the CGL Policies and the Umbrella Policies for the Counterclaim and/or Underlying Lawsuit.

## **JURISDICTION & VENUE**

5.      Jurisdiction over this matter is appropriate pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

6.      Venue is appropriate in this district pursuant to 28. U.S.C. § 1391(a), in that the Underlying Lawsuit is pending in this district and a substantial part of the events giving rise to this claim occurred in this district.

## THE PARTIES

7.      Plaintiff Union is, and at all relevant times has been, a corporation organized under the laws of Iowa with its principal place of business in Urbandale, Iowa.  Accordingly, Union is a citizen of Iowa.

8.      Plaintiff Acadia is, and at all relevant times has been, a corporation organized under the laws of Iowa with its principal place of business in Westbrook, Maine.  Accordingly, Union is a citizen of Iowa and Maine.

9.      Plaintiff CWIC is, and at all relevant times has been, a corporation organized under the laws of Iowa with its principal place of business in Urbandale, Iowa.  Accordingly, CWIC is a citizen of Iowa.

10.      Defendant BCW is, and at all relevant times has been, an Indiana corporation with its principal place of business in Middletown, Indiana.  Accordingly, BCW is a citizen of Indiana.

11.      Defendant Ultra PRO International, LLC ("Ultra Pro"), is a Delaware limited liability company with its principal place of business in Commerce, California.  A Statement of Information filed by Ultra Pro with the California Office of the Secretary Of State identifies the limited liability members of Ultra Pro as Marc Lieberman and Sheldon Rosenberg who are both domiciled in and citizens of Commerce, California.  Accordingly, Ultra Pro is a citizen of California.

12.      Plaintiffs, through counsel, conducted a reasonable inquiry to determine the citizenship of Ultra Pro International, LLC, and its members by searching available public records

3

including the Delaware, California, and Indiana Secretary of State websites, other internet sources, LexisNexis and PACER.

13.     Plaintiffs' investigation revealed only the above-referenced limited liability company members of Ultra Pro and no connection between Ultra Pro and/or its members and the State of Iowa, where Plaintiffs are incorporated, or the State of Maine, where Acadia's principal place of business is located.

14.     Plaintiffs hereby aver the results of its investigation to determine the citizenship of Ultra Pro, which is sufficient to satisfy the jurisdictional requirements. *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 376 (7th Cir. 2010); *Emps. Preferred Ins. Co. v. C&K Hotel Grp., LLC*, No. 15-CV-1500, 2016 WL 755600, at *3 (C.D. Ill. Feb. 25, 2016)(citing *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 106-11 (3d Cir. 2015) (a plaintiff's good faith allegations of the requisite jurisdictional basis regarding an LLC is sufficient to survive a facial attack) and *Carolina Casualty Insurance Co. v. Team Equipment, Inc*., 741 F.3d 1082 (9th Cir. 2014) (holding similarly).

15.     To the extent there exists any factual challenge to jurisdiction, Plaintiffs request that they be permitted to conduct jurisdictional discovery to confirm that complete diversity exists among the parties.

16.     Ultra Pro is a Counter-Plaintiff in the Underlying Lawsuit and is joined as a Defendant herein as a necessary party so that it may be bound by the judgment entered in this case. If Ultra Pro executes a stipulation agreeing to be bound by any judgment entered herein, Plaintiffs will voluntarily dismiss Defendant from this action.

## THE UNDERLYING LAWSUIT

17.     Ultra Pro initially filed a Complaint for trademark infringement and related claims against Defendant BCW in the U.S. District Court for the Northern District of Illinois, case no. 24-

cv-04725 (the "Illinois Lawsuit").  That suit was voluntarily dismissed by Ultra Pro and re-filed in the U.S. District Court for the Central District of California as case no. 24-cv-08467 (the "California Lawsuit").[1]

18.    After the Illinois Lawsuit was dismissed, BCW filed its own action against Ultra Pro styled *Ultra PRO International, LLC. v. BCW Diversified, Inc.,* Case No. 24-cv-01699-MJD-RLY, in the United States District Court for the Southern District of Indiana, seeking declaratory relief in connection with the trademark dispute (the "Underlying Lawsuit").

19.    On September 2, 2025, Ultra Pro filed its First Amended Answer and Counterclaims against BCW in the Underlying Lawsuit alleging trademark infringement and unfair competition in violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and the common law and statutory law of the state of Indiana (the "Counterclaim"). A copy of the Counterclaim is attached hereto as **Exhibit A**.

20.    Specifically, the Counterclaim alleges that Ultra Pro is a manufacturer, wholesaler, and retail seller of protective card sleeves, binders, and holders for collectible trading cards and game cards.  Exh. A., ¶¶ 8-10.

21.    Ultra Pro alleges that it has been in operation for decades and is extremely well known and famous for its products.  *Id*.

22.     Ultra Pro further alleges that beginning in the 1990s, Ultra Pro introduced individual card protectors and storage pages under the ULTRA PRO trademark.  Exh. A., ¶13.

23.    As trading card games grew in popularity, Ultra Pro alleges that it introduced several other brands of trading card accessories including PENNY SLEEVES, TOPLOADER, MINI SNAP, DECK BOX, PRO-BINDER, and DECK VAULT.  Exh. A., ¶14.

---

[1] Plaintiffs understand that the California Lawsuit has also been dismissed.

24.    Ultra Pro also alleges that it developed innovative technology that provides a playable sleeve with one opaque side it named CHROMAFUSION TECHNOLOGY.  Exh. A., ¶15.

25.    The Counterclaim alleges that to protect its valuable rights in its trademarks, Ultra Pro obtained valid and enforceable United States Trademark registrations for each of its ULTRA PRO, PENNY SLEEVES, TOPLOADER, MINI SNAP, DECK BOX, PRO-BINDER, DECK VAULT, and CHROMAFUSION TECHNOLOGY trademarks (hereinafter referred to collectively as the "Marks").  Exh. A., ¶16.

26.    Ultra Pro alleges that it uses the Marks on its website and on many of its products, as well as at the point of sale of its products as a "source identifier" for Ultra Pro's goods and services.  *See generally*, Exh. A., ¶¶27-61.

27.    According to the Counterclaim, BCW designs, manufactures, and sells products to protect, store, and display collectibles, including trading cards and playing cards, and is a direct competitor of Ultra Pro.  Exh. A., ¶¶62-64.

28.    The Counterclaim further alleges that both Ultra Pro and BCW market and sell their products online through their own websites, through third-party resellers including Amazon.com, and in-person at conventions.  Exh. A., ¶73.

29.    The Counterclaim alleges that rather than use product names and descriptions that differentiate BCW's products from Ultra Pro's, BCW instead uses product names and descriptions that are confusingly similar to or identical to the Ultra Pro Marks, including marks "Pro Pocket," "Pro Pages," "Pro [#]-Pocket,"  "Penny Sleeves," "Mini Snap," "Deck Vault," "Chroma," "Toploader," "Topload," "Deck Case," and "Deck Box" (hereinafter referred to collectively as the "Infringing Designations").  Exh. A., ¶¶75-124.

30.     Ultra Pro alleges that BCW has purposefully and willfully engaged in a pattern of intentionally adopting names that are identical to and/or confusingly similar to the Ultra Pro Marks for the purpose of intentionally trading on the substantial goodwill in the Ultra Pro Marks and the popularity of Ultra Pro's products.  Exh. A., ¶¶76, 78, 141.

31.     Ultra Pro alleges that BCW's use of the Infringing Designations are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of BCW with Ultra Pro, or as to the origin, sponsorship, or approval of BCW's goods, services, or commercial activities by Ultra Pro, and therefore infringe Ultra Pro's Marks.   Exh. A., ¶¶75-124; *see generally* Counts I-V.

32.     Ultra Pro also alleges that BCW has continued to use the Infringing Designations even after notice from Ultra Pro.  Exh. A., ¶77.

33.     The Counterclaim includes five causes of action sounding in federal unfair competition, false designation of origin, and false advertising (Lanham Act, 15 U.S.C. 1125(a)) (Count I); infringement of federal registered trademark (Lanham Act, 15 U.S.C. 1114(1)) (Count II); common law trademark infringement (Count III); deceptive trade practices under the Indiana law (Ind. Code 24-5-0.5-3.D) (Count IV); and common law unfair competition (Count V).  Exh. A., pgs. 34-40.

34.     The Counterclaim seeks an order enjoining BCW from using the Ultra Pro Marks or Infringing Designations; compensatory, statutory, punitive, and consequential damages; disgorgement of profits; pre- and post judgment interest, costs, and attorneys' fees. Exh. A., ¶175; pgs. 40-43.

## THE INSURANCE POLICIES

35.    Union (and then Acadia) issued a series of Commercial Lines Policies under policy numbers CPA 3056536 and CPA 3241012[2] to BCW providing, in relevant part, Commercial General Liability coverage beginning March 15, 2014, for one-year terms through March 15, 2025. The CGL Policies each include limits of $1,000,000 per "personal and advertising injury" offense and $2,000,000 in the aggregate.

36.    The CGL Policies contain an identical coverage form and many of the same forms and endorsements.  Accordingly, for ease of reference, the Union and Acadia CGL Policies will be referred to collectively as the "CGL Policies" unless otherwise specified.  Furthermore, because the CGL Policies all contain the same relevant coverage forms and endorsements, rather than attach all ten (10) policies as exhibits, Plaintiffs have attached a copy of the first CGL Policy issued to BCW for the policy period of March 15, 2014, to March 15, 2015, as **Exhibit B**.  Plaintiffs will produce complete copies of all of the CGL Policies in their Rule 26(a)(1) initial disclosures.

37.    CWIC also issued a series of consecutive Commercial Liability Umbrella Policies under policy numbers CPA 3056536 and CPA 3241012 providing Umbrella Liability coverage commencing March 15, 2014, for one-year terms through March 15, 2025.  The Umbrella Policies each include limits of $5,000,000 for "personal and advertising injury" and in the aggregate.

38.    The Umbrella Policies contain an identical coverage form and many of the same forms and endorsements.  Accordingly, for ease of reference, the CWIC Umbrella Policies will be referred to collectively as the "Umbrella Policies" unless otherwise specified. Furthermore, because the Umbrella Policies all contain the same relevant coverage forms and endorsements,

---

[2] The policy number changed to 3241012 beginning with the March 15, 2020, to March 15, 2021, policy term.

rather than attach all ten (10) policies as exhibits, Plaintiffs have attached a copy of the first

Umbrella Policy issued to BCW for the policy period of March 15, 2014, to March 15, 2015, as

**Exhibit C**.  Plaintiffs will produce complete copies of all of the Umbrella Policies in their Rule

26(a)(1) initial disclosures.

## **THE CGL POLICIES**

39.    The CGL Policies provide coverage under both Coverage A (Bodily Injury and

Property Damage Liability) and Coverage B (Personal and Advertising Injury Liability). *See* Exh.

B, generally.

40.    As an initial matter, the Counterclaim does not allege "bodily injury" or "property

damage" caused by an "occurrence," as those terms are defined in the CGL Policies.  Accordingly,

Coverage A of the CGL Policies does not apply to this matter.

41.     With respect to Coverage B (Personal and Advertising Injury Liability), the CGL

Policies include the following Insuring Agreement, which provides in relevant part:

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.    Insuring Agreement**

   **a.**    We will pay those sums that the insured becomes legally obligated
   to pay as damages because of "personal and advertising injury" to
   which this insurance applies. We will have the right and duty to
   defend the insured against any "suit" seeking those damages.
   However, we will have no duty to defend the insured against any
   "suit" seeking damages for "personal and advertising injury" to
   which this insurance does not apply. We may, at our discretion,
   investigate any offense and settle any claim or "suit" that may result.
   [...]

   **b.**    This insurance applies to "personal and advertising injury" caused
   by an offense arising out of your business but only if the offense was
   committed in the "coverage territory" during the policy period.

42.    The CGL Policies define the terms "advertisement" and "personal and advertising injury" as follows:

**SECTION V - DEFINITIONS**

**1.**    "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **a.**    Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **b.**    Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

[. . .]

**14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**    False arrest, detention or imprisonment;

    **b.**    Malicious prosecution;

    **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**    Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.**    The use of another's advertising idea in your "advertisement"; or

    **g.**    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

43.    The Counterclaim alleges that BCW's use of the Infringing Designations infringes upon Ultra Pros Marks and asserts causes of action sounding in federal unfair competition, false designation of origin, and false advertising; federal trademark infringement; common law trademark infringement; deceptive trade practices; and common law unfair competition.

10

44.     Allegations of federal and common law trademark infringement and associated claims for unfair competition, false designation of origin, and deceptive trade practices based on BCW's use of infringing trademarks do not allege or constitute "personal and advertising injury" as defined by the CGL Policies.

45.     Claims for disgorgement of profits, willful or intentional infringement, and/or the costs to comply with injunctive or declaratory relief are not covered "damages" under the CGL Policies or are otherwise uninsurable as a matter of law.

46.     The CGL Policies also include an exclusion 2.i (Infringement of Copyright, Patent, Trademark or Trade Secret), which provides that the insurance does not apply to:

**i.      Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

(hereinafter referred to as the "IP Infringement Exclusion").

47.     Section 2., Exclusions, of the CGL Policies also includes an exclusion 2.a (Knowing Violation of Rights of Another), which provides that this insurance does not apply to:

**a.      Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

48.     Section 2., Exclusions, of the CGL Policies also includes an exclusion 2.a (Material Published With Knowledge of Falsity), which provides that this insurance does not apply to:

**b.      Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

49. Section 2., Exclusions, of the CGL Policies also includes an exclusion 2.c (Material Published Prior to Policy Period), which provides that this insurance does not apply to:

**c.    Material Published Prior to Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

50. Section 2., Exclusions, of the CGL Policies also includes an exclusion 2.l (Unauthorized Use of Another's Name Or Product), which provides that this insurance does not apply to:

**l.    Unauthorized Use of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your email address, domain name, or metatag, or any other similar tactics to mislead another's potential customers.

## THE UMBRELLA POLICIES

51. CWIC issued a series of consecutive Commercial Umbrella Liability policies to BCW providing Umbrella Liability Coverage for one-year policy periods commencing March 15, 2014, through March 15, 2025.

52. Section I – COVERAGES, Coverage B (Personal and Advertising Injury Liability) of the Umbrella Policies contains the following Insuring Agreement:

**1.    Insuring Agreement**

**a.**    We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance"

does not provide coverage or the limits of "underlying insurance" have been exhausted. […]

[* * *]

    **b.**    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

53.    The Umbrella Policies include the following DEFINITIONS relevant to this matter:

**1.**    "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **a.**    Notices that are published include material placed on the Internet or on similar electronic means of communication; and
    **b.**    Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

[* * *]

**14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**    False arrest, detention or imprisonment;
    **b.**    Malicious prosecution;
    **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
    **d.**    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    **e.**    Oral or written publication, in any manner, of material that violates a person's right of privacy;
    **f.**    The use of another's advertising idea in your "advertisement"; or
    **g.**    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

[* * *]

**19.**    "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

[* * *]

23. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

24. "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".

[* * *]

54. The Umbrella Policies include an exclusion a.(9) (Infringement of Copyright, Patent, Trademark or Trade Secret), which provides that the insurance does not apply to "personal and advertising injury" for the following:

**(9)     Infringement Of Copyright, Patent, Trademark Or Trade Secret**

Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

(the "IP Infringement Exclusion").

55. Section 2., Exclusions, of the Umbrella Policies also includes an exclusion a.(1) (Knowing Violation of Rights of Another), which provides that this insurance does not apply to "personal and advertising injury":

**(1)     Knowing Violation Of Rights Of Another**

Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

56.    Section 2., Exclusions, of the Umbrella Policies also includes an exclusion a.(2) (Material Published With Knowledge of Falsity), which provides that this insurance does not apply to "personal and advertising injury":

**(2)    Material Published With Knowledge Of Falsity**

Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

57.    Section 2., Exclusions, of the Umbrella Policies also includes an exclusion a.(3) (Material Published Prior to Policy Period), which provides that this insurance does not apply to "personal and advertising injury":

**(3)    Material Published Prior to Policy Period**

Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

58.    Section 2., Exclusions, of the Umbrella Policies also includes an exclusion a.(12) (Unauthorized Use of Another's Name Or Product), which provides that this insurance does not apply to "personal and advertising injury":

**(12)    Unauthorized Use of Another's Name Or Product**

Arising out of the unauthorized use of another's name or product in your email address, domain name, or metatag, or any other similar tactics to mislead another's potential customers.

<u>**COUNT I – DECLARATORY JUDGMENT**</u>
<u>**(CGL POLICIES)**</u>

59.    Plaintiffs incorporate and re-allege the preceding paragraphs 1-58 as if fully restated and set forth herein as paragraph 59 of Count I of their Complaint for Declaratory Judgment.

60.     Plaintiffs have and had no duty to defend or indemnify BCW under the CGL Policies for the claims asserted against BCW in the Counterclaim or Underlying Lawsuit for the following reasons:

a.     The Counterclaim fails to allege a "personal and advertising injury" offense as defined in the CGL Policies, and therefore, fails to satisfy the Insuring Agreement for Coverage B of the CGL Policies;

b.     Even if the Counterclaim alleges a "personal and advertising injury" offense, which it does not, the offense or conduct occurred before or after the policy period of the CGL Policies, respectively, and therefore, fails to satisfy the Insuring Agreement for Coverage B of the CGL Policies;

c.     Even if the Counterclaim alleges a "personal and advertising injury" offense, which it does not, the IP Infringement Exclusion (exclusion 2.i) bars coverage under the CGL Policies for the claims asserted in the Counterclaim and Underlying Lawsuit;

d.     Even if the Counterclaim alleges a "personal and advertising injury" offense, which it does not, the Knowing Violation exclusion (exclusion 2.a) bars coverage under the CGL Policies for the claims asserted in the Counterclaim and Underlying Lawsuit;

e.     Even if the Counterclaim alleges a "personal and advertising injury" offense, which it does not, the Knowledge of Falsity Exclusion (exclusion 2.b) bars coverage under the CGL Policies for the claims asserted in the Counterclaim and Underlying Lawsuit;

f.     Even if the Counterclaim alleges a "personal and advertising injury" offense, which it does not, the Prior Publication Exclusion (exclusion 2.c) bars coverage under the CGL Policies for the claims asserted in the Counterclaim and Underlying Lawsuit;

g.     Even if the Counterclaim alleges a "personal and advertising injury" offense, which it does not, the Unauthorized Use Exclusion (exclusion 2.l) bars coverage under the CGL Policies for the claims asserted in the Counterclaim and Underlying Lawsuit; and

h.     Claims for disgorgement of profits, willful or intentional infringement, and/or the costs to comply with injunctive or declaratory relief are not covered "damages" under the CGL Policies, do not satisfy the Insuring Agreement of the CGL Policies, or are otherwise uninsurable as a matter of law.

61.    An actual controversy exists between Plaintiffs and Defendants and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, respectfully pray that this Honorable Court:

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the CGL Policies;

b.    Find and declare that the CGL Policies do not afford coverage for the claims asserted against BCW in the Counterclaim or Underlying Lawsuit;

c.    Find and declare that Plaintiffs have and had no duty under the CGL Policies to defend and/or indemnify BCW Diversified, Inc., in connection with the Underlying Lawsuit or Counterclaim; and

d.    Grant Plaintiffs such other and further relief that the Court deems proper and just under the facts and circumstances.

## COUNT II – DECLARATORY JUDGMENT
## (UMBRELLA POLICIES)

62.    Plaintiffs incorporate and re-allege the preceding paragraphs 1-61 as if fully restated and set forth herein as paragraph 62 of Count II of their Complaint for Declaratory Judgment.

63.    Plaintiffs have and had no duty to defend or indemnify BCW under the Umbrella Policies for the claims asserted against BCW in the Counterclaim or Underlying Lawsuit for the following reasons:

a.    The Counterclaim fails to allege a "personal and advertising injury" offense as defined in the Umbrella Policies, and therefore, fails to satisfy the Insuring Agreement for Coverage B of the Umbrella Policies;

b.    Even if the Counterclaim alleges a "personal and advertising injury" offense, which it does not, the offense or conduct occurred before or after the policy period of the Umbrella policies, respectively, and

therefore, fails to satisfy the Insuring Agreement for Coverage B of the Umbrella Policies;

c.   Even if the Counterclaim alleges a "personal and advertising injury" offense, which it does not, the IP Infringement Exclusion (exclusion a.(9)) bars coverage under the Umbrella Policies for the claims asserted in the Counterclaim and Underlying Lawsuit;

d.   Even if the Counterclaim alleges a "personal and advertising injury" offense, which it does not, the Knowing Violation Exclusion (exclusion a.(1)) bars coverage under the Umbrella Policies for the claims asserted in the Counterclaim and Underlying Lawsuit;

e.   Even if the Counterclaim alleges a "personal and advertising injury" offense, which it does not, the Knowledge of Falsity Exclusion (exclusion a.(2)) bars coverage under the Umbrella Policies for the claims asserted in the Counterclaim and Underlying Lawsuit;

f.   Even if the Counterclaim alleges a "personal and advertising injury" offense, which it does not, the Prior Publication Exclusion (exclusion a.(3)) bars coverage under the Umbrella Policies for the claims asserted in the Counterclaim and Underlying Lawsuit;

g.   Even if the Counterclaim alleges a "personal and advertising injury" offense, which it does not, the Unauthorized Use exclusion (exclusion a.(12)) bars coverage under the Umbrella Policies for the claims asserted in the Counterclaim and Underlying Lawsuit; and

h.   Claims for disgorgement of profits, willful or intentional infringement, and/or the costs to comply with injunctive or declaratory relief are not covered "damages" under the Umbrella Policies, do not satisfy the Insuring Agreement of the Umbrella Policies, or are otherwise uninsurable as a matter of law.

64.   An actual controversy exists between Plaintiffs and Defendants and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, respectfully pray that this Honorable Court:

a.   Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Umbrella Policies;

b.   Find and declare that the Umbrella Policies do not afford coverage for the claims asserted against BCW in the Counterclaim or Underlying Lawsuit;

c.   Find and declare that Plaintiffs have and had no duty under the Umbrella Policies to defend and/or indemnify BCW Diversified, Inc. in connection with the Underlying Lawsuit or Counterclaim; and

d.   Grant Plaintiffs such other and further relief that the Court deems proper and just under the facts and circumstances.

Dated this 12th day of January, 2026.

Respectfully submitted,

/s/ Jason M. Taylor
_____
One of the Attorneys for PLAINTIFFS INSURANCE COMPANY

Jason M. Taylor
IL Attorney No. 6293925
TRAUB LIEBERMAN
STRAUS & SHREWSBERRY, LLP
71 S. Wacker Dr., Suite 2110
Chicago, Illinois 60603
312.332.3900
312.332.3908 (f)
drice@tlsslaw.com
jtaylor@tlsslaw.com